STATE OF CONNECTICUT; State of Connecticut Commission on Hospitals and Health Care; State of Connecticut Department of Income Maintenance; St. Francis Hospital and Medical Center; and the Mount Sinai Hospital Corporation, Plaintiffs,

v.

UNITED STATES of America; United States Office of Personnel Management; and Douglas A. Brook, Acting Director, United States Office of Personnel Management, Defendants.

No. 2:92CV813 (WWE).

United States District Court,
D. Connecticut.

March 26, 1998.

David C. Stone of St. Francis Hosp., Hartford, CT, for St. Francis Hosp. and Medical Center and the Mount Sinai Hosp. Corp.; Paul Lahey, Richard J. Lynch and Arnold I. Menchel, Assistant Attorneys General, Hartford CT, for State of Connecticut, Commission of Hospitals and Health Case, and State of Connecticut Dept. of Income Maintenance.

Arthur R. Goldberg, Carole A. Jeandheur, and Eric J. Mahr, Department of Justice, Federal Programs Branch, Washington, DC, for Defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiffs State of Connecticut, State of Connecticut Commission on Hospitals and Health Care, State of Connecticut Department of Income Maintenance, St. Francis Hospital and Medical Center, and the Mount Sinai Hospital Corporation bring this action for declaratory and injunctive relief against defendants United States of America, United States Office of Personnel Management (the "OPM"), and Douglas A. Brook, Acting Director of the United States Office of Personnel Management.

Specifically, plaintiffs seek a declaratory judgment reversing the OPM's findings that the Federal Employee Health Benefit Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, preempts certain methods that Connecticut has employed to fund its Uncompensated Care Pool (the "UCP"), insofar as those methods impose a tax, fee, or other monetary payment upon private insurance carriers which cover federal employees' medical expenses. Plaintiffs also seek to enjoin defendants from instructing those insurance carriers not to pay the UCP-related assessments which the OPM has deemed preempted.

Defendants maintain that the FEHBA preempts a variety of methods plaintiffs have employed to fund the UCP, and counterclaim for a declaratory judgment so stating. Defendants also seek to enjoin plaintiffs from continuing to impose the allegedly preempted UCP-related assessments upon federal employees' insurance carriers, and from pursuing efforts to collect payment of those UCP-related assessments from the carriers and/or the federal employees whom they insure. Finally, defendants counterclaim for reimbursement of certain UCP-related assessments paid to plaintiffs on or after December 17, 1991.

Before the court are the parties' cross-motions for summary judgment as to the preemption issue only. For the reasons set forth below, both Motions for Summary Judgment will be granted in part and denied in part.

## I. BACKGROUND

### A. The Federal Employees' Health Benefits Act

The Federal Employees Health Benefit Act of 1959 ("FEHBA"), 5 U.S.C. § 8901 *et seq.* established the Federal Employees Health Benefits Plan (the "Plan"), which provides medical insurance coverage for certain federal employees, their families, and federal retirees ("enrollees"). Pursuant to the FEHBA, the OPM, which administers the Plan, contracts with private insurance carriers ("FEHBP carriers") to provide the enrollees with medical insurance.

Pursuant to the FEHBA, both the enrollees and the United States contribute to the cost of the Plan. Those contributions are deposited into the Federal Employees Health Benefits Fund (the "Fund"). The OPM in turn creates for each FEHBP carrier a Letter of Credit account ("LOC") which is maintained as part of the Fund. Under this arrangement, a FEHBP carrier must initially pay enrollees' medical expenses from its own funds. The FEHBP carrier is then reimbursed by the Fund on a checks-presented basis by drawing against its LOC.

The FEHBA includes a preemption clause which prohibits a State from directly or indirectly imposing any tax, fee, or other monetary payment upon a FEHBP carrier, unless that tax, fee, or monetary payment applies to a broad range of business activities. 5 U.S.C. § 8909(f). *See also, Health Mainte-*

*nance Organization of New Jersey, Inc. v. Whitman*, 72 F.3d 1123, 1132 (3d Cir.1995).

### B. The Uncompensated Care Pool

In 1991, the Connecticut legislature enacted Conn. Pub. Act 91–2 (codified at Conn. Gen.Stat. § 19a–168 *et. seq.*) (hereinafter "Public Act 91–2"), which, in essence, required patients with private health insurance to subsidize the cost of hospital care for underinsured and uninsured patients.

Pursuant to Public Act 91–2, hospitals unilaterally imposed an uncompensated care assessment upon the hospital bills of patients with private health insurance. The funds collected by the hospitals from uncompensated care assessments were remitted to the State and placed into an Uncompensated Care Pool ("UCP"). The State redistributed the UCP funds to hospitals based on their level of uncompensated care.

In 1992, the OPM determined that the FEHBA preempted Public Act 91–2 to the extent that the uncompensated care assessments caused payments to be made from the Fund. The OPM instructed FEHBP carriers to discontinue paying uncompensated care assessments and to commence actions to recoup any such assessments paid on or after January 1, 1992.

In 1993, the State amended Public Act 91–2 with Conn. Pub. Acts 93–44 and 93–229 (codified as amended at Conn. Gen.Stat. § 19a–168 *et seq.*) (hereinafter the "1993 Amendments"). The 1993 Amendments eliminated uncompensated care assessments and replaced them with a two-part plan for funding the UCP. First, the State extended its 6% sales tax to hospital charges for patient care (the "sales tax"). Second, the state levied an assessment upon hospital revenues generated from patient care services (the "provider tax"). The funds collected from the sales tax and the provider tax were transmitted to the UCP, and were in turn redistributed to hospitals based on their level of uncompensated care. In July, 1993 the OPM determined that the FEHBA preempted the 1993 Amendments.

In 1994, the Connecticut legislature enacted Conn. Pub. Act. 94–4, which again modified the uncompensated care reimbursement system (hereinafter the "1994 Amendments"). The 1994 Amendments retained the 6% sales tax on hospital services, but provided that the proceeds from the sales tax were to be paid into the State's general fund rather than into the UCP (as amended, the "successor sales tax").

The 1994 Amendments also reconfigured the provider tax. Instead of taxing hospitals' patient care revenues, the State imposed a 1% tax on hospitals' gross earnings. Like the successor sales tax, proceeds collected from the successor provider tax were paid into the State's general fund (as amended, the "successor provider tax"). Plaintiffs allege in their Amended Complaint that the OPM has made either an actual determination or a *de facto* determination that the FEHBA preempts the 1994 Amendments. Defendants do not deny this allegation.

## II. ANALYSIS

### 1. Legal Standards

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted as to a claim, counterclaim or cross-claim when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In the instant action, both parties assert that they are entitled to judgment as a matter of law based on the principles of federal preemption. The United States Supreme Court has held that the Supremacy Clause of the United States Constitution, Article VI, provides for federal preemption of state law by express provision, by implication, or by a conflict between state and federal law. When, as here, a federal court must consider whether federal law preempts state regulatory powers, the court must begin with the presumption that Congress does not intend to supplant state law, and that a state law is not preempted unless that was the "clear and manifest purpose of Congress." *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 654–55, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (quoting *Rice v.*

*Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

### 2. Public Act 91–2

■ Plaintiffs seek a review of the OPM's 1992 determination that the FEHBA preempts Public Act 91–2. As previously noted, Public Act 91–2 unilaterally imposed an uncompensated care assessment upon the bills of privately insured hospital patients. Since the OPM is the administrative agency entrusted to interpret the FEHBA, the court must defer to its interpretation unless it is plainly erroneous or inconsistent with the language of the FEHBA. *See, Shalala v. Guernsey Memorial Hospital,* 514 U.S. 87, 103, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995).

The FEHBA preemption provision provides:

> (1) No tax, fee, or other monetary payment may be imposed, directly or indirectly, on a carrier or an underwriting or plan administration subcontractor of an approved health benefits plan by any State . . . with respect to any payment made from the Fund.

> (2) Paragraph (1) shall not be construed to exempt any carrier or underwriting or plan administration subcontractor of an approved health benefits plan from the imposition, payment, or collection of a tax, fee, or other monetary payment on the net income or profit accruing to or realized by such carrier or underwriting or plan administration subcontractor from business conducted under this chapter, if that tax, fee, or payment is applicable to a broad range of business activity.

5 U.S.C. § 8909(f).

■ Plaintiffs argue that the OPM's interpretation of the FEHBA is plainly erroneous and inconsistent with the language of the statute because the uncompensated care assessment was not made with respect to payments made from the Fund. Rather, plaintiffs assert, the uncompensated care assessment was made with respect to the *FEHBP carriers,* which were then reimbursed by the Fund. Moreover, plaintiffs argue that Congress intended the FEHBA preemption provision to only restrict the im-

position of premium taxes. Since the uncompensated care assessment was not a premium tax, plaintiffs conclude, it is not preempted.

The Second Circuit has addressed and rejected identical arguments in *Travelers Insurance Co. v. Cuomo,* 14 F.3d 708 (2d Cir. 1993), *reversed on other grounds, New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645, 654–55, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In *Travelers,* the appellate court was asked to determine whether the FEHBA preempted a surcharge imposed by the State of New York upon patients' hospital bills. The court held that the FEHBA preempts state-imposed surcharges which increase the amount FEHBP carriers draw from the Fund. Moreover, because the Second Circuit found that Congress' intent in enacting the FEHBA was to reduce government expenditures, it concluded that Congress did not intend the FEHBA preemption provision to restrict only premium taxes. *Id.* at 716. Although the Supreme Court reversed the Second Circuit's findings in *Travelers* as to an ERISA issue, it declined to review the appellate court's FEHBA analysis. *See generally, New York State Conference of Blue Cross and Blue Shield Plans, supra.*

Given the Second Circuit's findings in *Travelers,* this court must reject plaintiff's argument that the uncompensated care assessment was not made with respect to payments made from the Fund. Like the assessment in *Travelers,* the assessment in question here was levied against patients' hospital bills. Because the FEHBP carriers were obligated to pay those bills and seek reimbursement from the Fund, the uncompensated care assessment increased amounts carriers drew from the Fund. In addition, because the Second Circuit explicitly held that the FEHBA preemption provision does not apply only to premium taxes, this court rejects plaintiff's argument to the contrary. *Travelers* at 716.

Plaintiffs also assert that Public Act 91–2 did not increase amounts FEHBA carriers drew from the Fund because, prior to the enactment of Public Act 91–2, Connecticut had historically imposed upon patients' hospi-

tal bills an unidentified assessment which was then redistributed to hospitals with disproportionate uncompensated care costs. Plaintiffs thus maintain that Public Act 91–2 did nothing more than isolate and identify charges traditionally levied.

The court is unconvinced by this argument. The fact that Connecticut may have traditionally compelled FEHBA carriers to unwittingly increase amounts they drew from the Fund by imposing an unidentified assessment upon those carriers does not permit the conclusion that the State should have been permitted to do so after it was revealed to defendants that the FEHBA carriers were being so assessed, and after it became unlawful to do so. *See, The City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir.1994) (equitable estoppel claim only applicable to federal government in instances in which the government has engaged in affirmative misconduct). Accordingly, the court declines to disturb the OPM's determination that the FEHBA preempts Public Act 91–2, because it finds that determination to have been a reasonable one.

### 3. The 1993 Amendments

■ Plaintiffs next seek review of the OPM's July, 1993 determination that the FEHBA preempts the 1993 Amendments. Although a court should generally defer to interpretations of statutes by agencies charged with their enforcement, no deference is required if an interpretation amounts to a post hoc litigation strategy. Because the OPM's July, 1993 determination was issued after plaintiffs brought this action against it, the court finds that the determination reflects the agency's post hoc litigation strategy and will afford it no deference. *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212–13, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); *Lewis v. Grinker*, 965 F.2d 1206, 1220 (2d Cir.1992).

■ As noted, the 1993 Amendments eliminated the uncompensated care assessment, replacing it with a sales tax on patients' hospital bills (the "sales tax") and an assessment on hospitals' revenues (the "provider tax"). Pursuant to the 1993 Amendments, funds from the sales tax and the provider tax were collected, pooled into the UCP, and redistributed to hospitals according to need.

Plaintiffs argue that the sales tax is "saved" from preemption because, being a sales tax, it applied to a broad range of business activity. Defendants contend that the sales tax varied in no substantive way from the uncompensated care assessment and therefore is preempted. Defendants point out that, unlike the vast majority of the proceeds from Connecticut's 6% sales tax, the sales tax of the 1993 Amendments was specifically earmarked to fund the UCP.

Pursuant to the FEHBA, an assessment that would otherwise be preempted is saved from preemption if it applies to a broad range of business activity. Accordingly, if the sales tax as set forth in the 1993 Amendments can be said to have applied to a broad range of business activity, then the FEHBA does not preempt it, *Health Maintenance Organization of New Jersey* at 1131–32.

The court finds that the sales tax of the 1993 Amendments was not akin to Connecticut's overall 6% sales tax, which is applied to a multitude of industries and, in the majority of instances, is remitted to the State's general fund. Rather, the sales tax of the 1993 Amendments was specifically levied on hospital industry services for the narrow purpose of funding the UCP. Accordingly, the court concludes that the sales tax of the 1993 Amendments did not fall within the exception to the FEHBA preemption provision because it did not apply to a broad range of business activity. *See, Health Maintenance Organization of New Jersey* at 1132 (for a tax, fee, or monetary payment to apply to a broad range of business activity, it must at the very least apply to more than a single industry).

■ The court disagrees, however, with defendants' position that the provider tax is likewise preempted because it linked the surcharge to the payment of hospital charges. The court does not find this to be the relevant inquiry. Rather, in order for the FEHBA to preempt the provider tax, the tax must have increased the amounts FEHBP carriers drew from the Fund. *Travelers* at 716.

Because the provider tax was levied against hospitals and not patients, that tax

can only be preempted if, because of the tax, FEHBP carriers had increased amounts drawn from the Fund. That is, in order for preemption to apply, hospitals must have passed on at least part of the cost of the provider tax to their patients, and in turn, to the FEHBP carriers. Plaintiffs deny that any such costs were passed on to hospital patients, and defendants have proffered no evidence to the contrary. Accordingly, the court holds that the FEHBA does not preempt the provider tax because there is no evidence that it increased amounts FEHBP carriers drew from the Fund. Moreover, the court would have so held even if it had owed some deference to the OPM's interpretation, because the court finds that interpretation to be unreasonable and in conflict with the plain language of the statute.

#### 4. The 1994 Amendments

Finally, plaintiffs seek a determination as to whether the 1994 Amendments are preempted by the FEHBA. Plaintiffs assert in their Amended Complaint that the OPM has made an actual or *de facto* determination that the FEHBA preempts those amendments. Because defendants do not deny this allegation, it is deemed admitted. Fed. R.Civ.P. 8(d). The court notes that because the OPM has not articulated its position with regard to the 1994 Amendments, any such OPM determination is not entitled to deference. *Bowen, supra,* at 212–14, 109 S.Ct. at 474.

■ As previously noted, the 1994 Amendments created the successor sales tax and the successor provider tax. The successor sales tax differs from the sales tax of the 1993 Amendments in that, instead of going directly to fund the UCP, its proceeds are deposited into the State's general fund. The successor provider tax differs from the provider tax of the 1993 Amendments in that it assesses hospitals' gross earnings and not patient care revenues. Additionally, the successor provider tax is paid into the State's general fund.

The court finds that the FEHBA does not preempt the successor sales tax because it is applied and administered in conformity with the State's general 6% sales tax, and there-

fore is applicable to a broad range of business activity. Defendants do not successfully contest this point, since the only case they cited in their favor has been reversed. *See, Connecticut Hospital Ass'n. v. Weltman,* 66 F.3d 413 (2d Cir.1995) *reversing Connecticut Hospital Ass'n. v. Pogue,* 870 F.Supp. 444 (D.Conn.1994).

Finally, because there is no evidence that hospitals have passed on at least part of the cost of the successor provider tax to their patients, and in turn to the FEHBP carriers, the court concludes that the successor provider tax is not preempted by the FEHBA because it is not made with respect to the Fund. *Travelers* at 716.

### III. CONCLUSION

Based on the foregoing analysis, plaintiffs' Motion for Summary Judgment [doc. # 76] is hereby GRANTED in part and DENIED in part. Defendants' Motion for Summary Judgment [doc. # 72] is also GRANTED in part and DENIED in part.

It is ORDERED that declaratory relief is hereby granted to defendants as follows:

(1) The Federal Health Benefits Act, 5 U.S.C. § 8909(f), preempts Conn. Pub. Act. 91–2; and

(2) The Federal Health Benefits Act, 5 U.S.C. § 8909(f), preempts Conn. Pub. Act. 93–44.

It is ORDERED that declaratory relief is hereby granted to plaintiffs as follows:

(1) The Federal Health Benefits Act, 5 U.S.C. § 8909(f), does not preempt Conn. Pub. Act. 93–229; and

(2) The Federal Health Beneifts Act, 5 U.S.C. § 8909(f), does not preempt Conn. Pub. Act. 94–4.