# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1462

In the Matter of the Consolidated Hospital Surcharge Appeals of
Gillette Children's Specialty Healthcare, St. Luke's Hospital,
North Memorial Health Care, HealthEast Care System,
Park Nicollet Health Services, Fairview Health Services,
and Children's Hospitals and Clinics of Minnesota.

**Filed July 6, 2015**
**Affirmed**
**Johnson, Judge**

Minnesota Department of Human Services
OAH Docket No. 8-1800-30119

Salvatore G. Rotella, Jr. (pro hac vice), Reed Smith LLP, Philadelphia, Pennsylvania; and

Thomas R. Muck, Samuel D. Orbovich, Sten-Erik Hoidal, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for appellants Gillette Children's Specialty Healthcare, St. Luke's Hospital, North Memorial Health Care, HealthEast Care System, Park Nicollet Health Services, Fairview Health Services, and Children's Hospitals and Clinics of Minnesota)

Lori Swanson, Attorney General, Barry R. Greller, Patricia A. Sonnenberg, Assistant Attorneys General, St. Paul, Minnesota (for respondent Minnesota Department of Human Services)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Johnson, Judge.

## S Y L L A B U S

Minnesota Statutes section 256.9657, subdivision 2, which directs the Minnesota Department of Human Services to assess and collect from hospitals a 1.56-percent surcharge on net patient revenues, is not preempted by the Federal Employee Health Benefits Act or by the federal statute authorizing the TRICARE program.

# OPINION

**JOHNSON**, Judge

We are asked to decide whether the State of Minnesota may, without encroaching on federal law, assess and collect a surcharge on the revenues that Minnesota hospitals receive for providing health-care services to persons who are insured by group health-insurance plans that cover employees of the federal government. We conclude that the applicable federal statutes do not preempt the applicable state statute. Therefore, we affirm the decision of the commissioner of human services.

## FACTS

In Minnesota, hospitals must pay a 1.56-percent surcharge on "net patient revenues." Minn. Stat. § 256.9657, subd. 2 (2014). The surcharge is assessed and collected by the Minnesota Department of Human Services (DHS) and deposited into the state general fund. Minn. Stat. § 256.9656 (2014).

The Federal Employees Health Benefits Act (FEHBA) authorizes the federal government to provide health insurance to employees of the federal government. *See generally* 5 U.S.C. §§ 8901-14 (2012). The act directs the federal Office of Personnel Management (OPM) to enter into group health-insurance contracts with insurance carriers. 5 U.S.C. § 8902(a). The act includes a provision that preempts certain state laws:

> (1) No tax, fee, or other monetary payment may be imposed, directly or indirectly, on a carrier or an underwriting or plan administration subcontractor of an approved health benefits plan by any State, the District of Columbia, or the Commonwealth of Puerto Rico, or by any political

2

subdivision or other governmental authority thereof, with respect to any payment made from the Fund.

(2) Paragraph (1) shall not be construed to exempt any carrier or underwriting or plan administration subcontractor of an approved health benefits plan from the imposition, payment, or collection of a tax, fee, or other monetary payment on the net income or profit accruing to or realized by such carrier or underwriting or plan administration subcontractor from business conducted under this chapter, if that tax, fee, or payment is applicable to a broad range of business activity.

5 U.S.C. § 8909(f).

Similarly, the federal TRICARE program provides health-insurance plans to uniformed service members of the United States armed forces. 10 U.S.C. §§ 1071, 1072(7) (2012). In a manner similar to FEHBA, the statute authorizing the TRICARE program directs the Secretary of Defense to enter into group health-insurance contracts with insurance carriers. *See* 10 U.S.C. §§ 1071, 1073(a) (2012). The statute authorizing the TRICARE program also preempts certain state laws. 10 U.S.C. § 1103 (2012). The language of the TRICARE preemption provision is different from the language of the FEHBA preemption provision, but a federal regulation promulgated by the Department of Defense states that the scope of the TRICARE preemption provision is the same as that of the FEHBA preemption provision. *See* 32 C.F.R. § 199.17(a)(7)(iii) (2014) (directing that interpretations of section 1103 "shall be consistent with those applicable to the Federal Employees Health Benefits Program under 5 U.S.C. 8909(f)").

In 2012, seven hospitals operating in Minnesota challenged DHS's assessments of the surcharge authorized by section 256.9657, subdivision 2(a), by separately filing

administrative appeals. *See* Minn. Stat. § 256.9657, subd. 6. The sole ground of each administrative appeal was that FEHBA and the statute creating the TRICARE program preempt the state statute that authorizes the surcharge. The commissioner of human services denied the hospitals' administrative appeals in September 2012.

The hospitals requested a consolidated contested-case hearing before the office of administrative hearings, and the commissioner consolidated the hospitals' administrative appeals. *See* Minn. R. 9510.2040, subp. 3 (2013). In November 2013, the parties filed cross-motions for summary disposition. *See* Minn. R. 1400.5500(K) (2013). In January 2014, the assigned administrative law judge (ALJ) issued a ten-page order recommending that DHS's motion for summary disposition be granted, that the hospitals' motion for summary disposition be denied, and that the hospitals' administrative appeals be dismissed.

In July 2014, the commissioner's delegatee, the director of the appeals office of the department, issued a seven-page order adopting the ALJ's recommendation. The hospitals appeal to this court by way of a writ of certiorari.

**ISSUE**

Do the federal statutes authorizing the FEHBA and TRICARE programs preempt Minnesota Statutes section 256.9657, subdivision 2, which authorizes the department of human services to assess and collect a surcharge on revenues received by Minnesota hospitals for health-care services to the extent that revenue is received for services provided to persons covered by the FEHBA and TRICARE programs?

4

**ANALYSIS**

The hospitals argue that the commissioner erred by deciding that Minnesota's surcharge on their revenues is not preempted by federal law to the extent that the hospitals receive revenues for services provided to persons covered by the FEHBA and TRICARE programs.

The commissioner's decision arose from a motion for summary disposition. "Summary disposition is the administrative equivalent of summary judgment." *Pietsch v. Board of Chiropractic Exam'rs*, 683 N.W.2d 303, 306 (Minn. 2004) (citing Minn. R. 1400.5500(K) (2003)). Accordingly, the commissioner may grant a motion for summary disposition if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *In re Rate Appeal of Benedictine Health Ctr.*, 728 N.W.2d 497, 500-01 n.3 (Minn. 2007). In reviewing an agency's grant of a motion for summary disposition, "[t]he scope of our review is governed by the Minnesota Administrative Procedures Act, Minn. Stat. § 14.63-69." *Hy-Vee Food Stores, Inc. v. Minnesota Dep't of Health*, 705 N.W.2d 181, 184 (Minn. 2005). The Minnesota Administrative Procedures Act provides:

> In a judicial review under sections 14.63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
>
> (a)　in violation of constitutional provisions; or
>
> (b)　in excess of the statutory authority or jurisdiction of the agency; or

   (c)  made upon unlawful procedure; or

   (d)  affected by other error of law; or

   (e)  unsupported by substantial evidence in view of the entire record as submitted; or

   (f)  arbitrary or capricious.

Minn. Stat. § 14.69 (2014).

## A.

We begin our analysis with the source of the federal preemption doctrine, the Supremacy Clause of the United States Constitution, which provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, § 2. The preemption of state law may operate impliedly, "through the direct operation of the Supremacy Clause," either because a federal statute conflicts with a state statute or because "the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively." *Kurns v. Railroad Friction Prods. Corp.*, 132 S. Ct. 1261, 1265-66 (2012) (quotations omitted); *see also In re Qwest's Wholesale Serv. Quality Standards*, 702 N.W.2d 246, 250-51 (Minn. 2005). In addition, Congress may enact a statute that expressly preempts certain state laws. *Kurns*, 132 S. Ct. at 1265. Thus, "Federal law can preempt state law in three ways: through (1) field preemption, (2) express preemption, and (3) conflict preemption (sometimes called 'implied conflict

6

preemption')." *Housing & Redevelopment Auth. v. Lee*, 852 N.W.2d 683, 687 (Minn. 2014) (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-54, 102 S. Ct. 3014, 3022 (1982)); *see also Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483, 1487 (1995); *In re Estate of Barg*, 752 N.W.2d 52, 63-64 (Minn. 2008). In this case, the parties agree that the issue presented by the hospitals' appeal is a matter of express preemption. Accordingly, we focus on the doctrine of express preemption, *i.e.*, the power of Congress "to pre-empt state law by so stating in express terms." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713, 105 S. Ct. 2371, 2375 (1985).

When interpreting the preemption provisions of the FEHBA and TRICARE statutes, we are mindful of the caselaw concerning the interpretation of federal preemption statutes. The United States Supreme Court has stated that "'[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 543 (2008) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250 (1996) (plurality opinion) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S. Ct. 219, 223 (1963))); *see also Meyer v. Nwokedi*, 777 N.W.2d 218, 222 (Minn. 2010). If a federal statute includes an "express preemption clause," we should "'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of United States v. Whiting*, 131 S. Ct. 1968, 1977 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737 (1993)). The Supreme Court also has recognized an "'assumption that the historic police powers of the States [are] not to

7

be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Altria Grp.*, 555 U.S. at 77, 129 S. Ct. at 543 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947)); *see also Dahl v. Charles Schwab & Co., Inc.*, 545 N.W.2d 918, 922 (Minn. 1996). "Thus, when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Grp.*, 555 U.S. at 77, 129 S. Ct. at 543 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S. Ct. 1788, 1801 (2005)); *see also Meyer*, 777 N.W.2d at 222.

**B.**

The preemption provision of FEHBA, which is quoted above in full, states, in pertinent part, that no state tax "may be imposed, directly or indirectly, on a carrier . . . with respect to any payment made from the Fund." 5 U.S.C. § 8909(f)(1). The plain language of section 8909(f)(1) reveals a clear and manifest intention by Congress to preempt any state law that imposes a tax on a "carrier" due to the carrier's receipt of a payment from the FEHBA fund. *See Health Maint. Org. of New Jersey, Inc. v. Whitman*, 72 F.3d 1123, 1128, 1133 (3d Cir. 1995) (holding that state tax imposed on carrier is preempted by FEHBA). But the plain language of section 8909(f)(1) does not speak directly to the validity of a state law that imposes a tax on a provider that receives payment from a carrier that receives payment from the FEHBA fund. The parties have stipulated that the hospitals that are parties to this appeal are health-care providers but *not* insurance carriers. The commissioner resolved the hospitals' administrative appeals in

8

part by reasoning that the surcharge authorized by section 256.9657, subdivision 2, "is not imposed upon carriers."

The hospitals contend that section 8909(f) preempts section 256.9657, subdivision 2, even though they are not carriers. They emphasize the phrase "directly or indirectly." *See* 5 U.S.C. § 8909(f)(1). They contend that section 256.9657, subdivision 2, *indirectly* imposes a tax on carriers because the hospitals pass along to carriers the costs of the surcharge authorized by section 256.9657, subdivision 2. More specifically, the hospitals contend that when they set their fees for services that are billed to insurance carriers, they do so in a manner that ensures that they recoup the costs of the surcharge, which inevitably causes the FEHBA fund to incur higher insurance premiums than would be incurred without the surcharge.[1]

There is no binding precedent on the question whether a state tax such as the surcharge authorized by section 256.9657, subdivision 2, is preempted by FEHBA. When interpreting a federal statute, this court is bound by the opinions of the United States Supreme Court and the opinions of the Minnesota Supreme Court that interpret and apply federal law. *See Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 20 (Minn. App. 2003); *Northpointe Plaza v. City of Rochester*, 457 N.W.2d 398, 403 (Minn. App. 1990), *aff'd*, 465 N.W.2d 686 (Minn. 1991); *Jendro v. Honeywell, Inc.*, 392 N.W.2d 688, 691 n.1 (Minn. App. 1986). Neither the United States

---

[1]The hospitals have submitted a thorough factual record to support this assertion. On appeal of a summary disposition, we view the facts in the light most favorable to the non-moving party and, thus, assume that the hospitals pass along the costs of the state surcharge to carriers. *See Benedictine Health Ctr.*, 728 N.W.2d at 500-01 n.3.

9

Supreme Court nor the Minnesota Supreme Court has considered whether section 8909(f) of FEHBA preempts a state law that imposes a tax or surcharge on health-care providers, thereby causing the providers to increase the fees paid by carriers, thereby causing the carriers to increase the premiums paid by the FEHBA fund. It appears that only one federal court of appeals and only one federal district court have considered that question. The United States Court of Appeals for the Fourth Circuit, 12 years ago, concluded that FEHBA does not preempt a West Virginia statute that imposes a tax on health-care providers, even though the increased costs arising from the state tax may be passed on to carriers that receive payments from the FEHBA fund. *United States v. West Virginia*, 339 F.3d 212, 218-19 (4th Cir. 2003). The United States District Court for the District of Connecticut, five years earlier, held that FEHBA may preempt a state statute that imposes a tax on health-care providers to the extent that the evidence shows that providers actually pass on the costs of the tax to carriers. *Connecticut v. United States*, 1 F. Supp. 2d 147, 153 (D. Conn. 1998).[2] It also appears that only one state appellate court has considered the question. *See Mobility Med., Inc. v. Mississippi Dep't of Revenue*, 119 So.

---

[2]The commissioner did not cite the *Connecticut* opinion in her decision, and the ALJ did not do so in his recommendation. The district court in *Connecticut* concluded that the state tax was not preempted because the United States did not submit evidence that the providers actually passed along the expenses of the tax to FEHBA carriers. *See* 1 F. Supp. 2d at 153. We do not perceive the *Connecticut* opinion to be particularly helpful or persuasive for our purposes because, in reaching its conclusion, the court relied solely on *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708 (2d Cir. 1993), *rev'd on other grounds by New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S. Ct. 1671 (1995). *Connecticut*, 1 F. Supp. 2d at 153. But in *Travelers*, the state tax was, in reality, a tax on carriers, although providers were required to collect the tax from carriers on behalf of the state. *See* 14 F.3d at 712. In *Connecticut*, however, the tax was imposed directly on providers. 1 F. Supp. 2d at 153.

3d 1002, 1003 (Miss. 2013) (holding that section 8909(f) does not preempt sales taxes assessed to medical-equipment retailer that sold equipment to individuals covered by FEHBA plans), *cert. denied*, 134 S. Ct. 1541 (2014). We may consider and apply the reasoning and the results of these opinions to the extent that we believe they are persuasive. *See Plymouth Congregational Church*, 672 N.W.2d at 20.

In the absence of any binding precedent, we resolve this appeal by applying the general principles concerning the interpretation of express preemption statutes. To reiterate, we ask whether the federal statute reveals that preemption "'was the clear and manifest purpose of Congress.'" *Altria Grp.*, 555 U.S. at 76, 129 S. Ct. at 543 (quoting *Rice*, 331 U.S. at 230, 67 S. Ct. at 1152). In applying that criterion to the FEHBA preemption provision, we conclude that Congress did not express a "clear and manifest" purpose to preempt state laws that impose a tax on providers that may have a consequential economic impact on carriers. If Congress had intended to preempt such a state law, we must assume that Congress would have used different language or additional language to make its intention clear. For example, Congress could have added the following highlighted words to paragraph 1 of section 8909(f), to prohibit a tax imposed "on a carrier *or on a health-care provider to the extent that the provider receives payments from a carrier . . . .*" Such a statement would clearly reveal Congress's intention to preempt state laws that impose a tax on providers if the cost of the tax is passed on to carriers. But Congress did not make such a statement or any similar statement. Because we do not discern in section 8909(f) a "clear and manifest" intention by Congress to preempt a state statute that imposes a tax on a provider, we interpret

11

section 8909(f) of FEHBA to not preempt section 256.9657, subdivision 2, of the Minnesota Statutes. *See id.*[3]

## C.

Before concluding, we must address three additional arguments by the hospitals that relate to the preemption analysis.

First, the hospitals contend that the commissioner erred by relying on the Fourth Circuit's opinion in *West Virginia*, which the hospitals assert is flawed in its reasoning. The commissioner relied on *West Virginia* only insofar as the Fourth Circuit relied on *United States v. Fresno*, 429 U.S. 452, 97 S. Ct. 699 (1977). *See West Virginia*, 339 F.3d at 216. In *Fresno*, the United States Supreme Court considered whether a state could impose a tax on federal employees' possessory interests in housing provided by the

---

[3]Because Congress's intent to preempt a tax on providers is not clear and manifest from the plain language of the FEHBA preemption provision, it is inappropriate to refer to legislative history. *See Chamber of Commerce*, 131 S. Ct. at 1980. "Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568, 125 S. Ct. 2611, 2626 (2005). We nonetheless note that the legislative history available to us does not indicate that Congress clearly intended to preempt a state tax on a provider merely because the tax would cause providers to charge carriers higher fees. A committee report indicates that the FEHBA preemption provision was intended to "exempt[] the [Federal Employees Health Benefits Program] from state *premium* taxes." *See* H.R. Rep. No. 101-881, at 173 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017, 2181 (emphasis added). The committee report also states that the FEHBA preemption provision is "intended to be similar in nature and application to the existing premium tax exemptions applicable to the Employees' Life Insurance Fund." *Id.*, 1990 U.S.C.C.A.N. at 2184 (citing 5 U.S.C. § 8714(c)(1) (2012) (providing that no state tax "may be imposed . . . on, or with respect to, any premium paid under an insurance policy purchased under this chapter")). Because premiums are paid by the FEHBA fund to carriers, the committee report indicates that the House committee intended to preclude the operation of state taxes only to the extent that they are imposed on transactions between the FEHBA fund and carriers, but not on transactions between carriers and providers.

federal government on federal land. *Id.* at 455-56, 97 S. Ct. at 701. The Supreme Court upheld the state statute, holding that "the economic burden on a federal function of a state tax imposed on those who deal with the Federal Government does not render the tax unconstitutional so long as the tax is imposed equally on the other similarly situated constituents of the State." *Id.* at 462, 97 S. Ct. at 705. The Supreme Court in *Fresno* did not apply a preemption statute but, rather, a constitutional doctrine, *i.e.*, the federal government's "immunity from state taxation inherent in the Supremacy Clause." *See id.* at 453, 97 S. Ct. at 700 (citing *McCulloch v. Maryland*, 17 U.S. 316, 396 (1819)). The Fourth Circuit reasoned that *Fresno* provided a useful analogy. *West Virginia*, 339 F.3d at 217. We agree that *Fresno* is analogous. We also acknowledge that Congress may choose to preempt any state law, even if the state law is not inherently inconsistent with the Supremacy Clause. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977). That acknowledgment begs the question whether Congress intended to preempt the state statute in this case, and we have resolved that question by applying the caselaw governing the interpretation of express preemption statutes, and we interpret the applicable federal statute to not preempt the applicable state statute.

Second, the hospitals contend that the commissioner erred by not applying a decision of the Minnesota Tax Court. In *HealthPartners, Inc. v. Commissioner of Revenue*, No. 6925, 1999 WL 123289 (Minn. Tax Ct. Mar. 4, 1999), the tax court considered whether section 8909(f) of FEHBA preempted the MinnesotaCare tax, which the commissioner of revenue is authorized to collect from health-care providers based on gross revenue. *See* Minn. Stat. § 295.52 (1994). HealthPartners was a "staff model

13

health plan company" that contracted directly with OPM to serve both as an insurance carrier and a health-care services provider for federal employees. *HealthPartners*, 1999 WL 123289, at *1-2. The tax court concluded that HealthPartners was a "carrier" and that the tax was imposed "indirectly . . . with respect to the payment by FEHBA." *Id.* at *6. Thus, the tax court held that FEHBA preempted the MinnesotaCare tax as applied to OPM's payments from the FEHBA fund to HealthPartners. *Id.*

In this case, the commissioner reasoned that *HealthPartners* "is neither binding nor applicable" to the hospital surcharge authorized by section 256.9657, subdivision 2. The commissioner is correct. The *HealthPartners* decision is not binding precedent in this case because the tax court is an executive-branch agency. *See* Minn. Stat. § 271.01, subd. 1 (2014). For that reason, tax court decisions have "little, if any, precedential effect." *Kmart Corp. v. County of Stearns*, 710 N.W.2d 761, 769 (Minn. 2006). This court has said that the tax court itself may not be bound by its own decisions but merely subject to a duty to provide reasons or explanations for any departure from its prior decisions. *See In re Whitehead*, 399 N.W.2d 226, 229 (Minn. App. 1987) (citing *Peoples Natural Gas Co. v. Minnesota Pub. Utilities Comm'n*, 342 N.W.2d 348, 352-53 (Minn. App. 1983), *review denied*, (Minn. Apr. 24, 1984)). In any event, the *HealthPartners* decision is distinguishable because it depended on the fact that HealthPartners was both a carrier and a provider, while the hospitals in this case are only providers. *See HealthPartners*, 1999 WL 123289, at *6; *see also Group Health Co-op. v. City of Seattle*, 189 P.3d 216, 223 (Wash. Ct. App. 2008) (noting that city could not avoid preemption of tax on HMO that served as both carrier and provider under section 8909(f) "by

unilaterally recharacterizing" HMO "as a health care 'provider' rather than a carrier"). Thus, the commissioner did not err by not applying or following the tax court's decision in *HealthPartners*.

Third, the hospitals contend that this court should defer to OPM's position concerning the scope of the FEHBA preemption provision. The hospitals contend that OPM has maintained a "consistently broad interpretation" of section 8909(f) and that this court should defer to OPM's interpretation pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984). Under *Chevron*, if a federal statute is ambiguous, a court "must give effect to an agency's *regulation* containing a reasonable interpretation" of the federal statute. *Christensen v. Harris Cnty.*, 529 U.S. 576, 586-87, 120 S. Ct. 1655, 1662 (2000) (emphasis added) (citing *Chevron*, 467 U.S. at 842-44, 104 S. Ct. at 2781-82). OPM has promulgated a regulation concerning section 8909(f), but that regulation does not answer the question before this court. *See* 48 C.F.R. § 1631.205-41 (implementing section 8909(f)). Accordingly, *Chevron* does not apply.

If an agency has not promulgated a regulation on a particular issue, courts should give the agency's position a lesser form of deference. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40, 65 S. Ct. 161, 164 (1944). Under *Skidmore*, a court should consider several factors in determining the degree of deference owed to an agency's interpretation of a federal statute, such as "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors that give it power to persuade." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1352

(2015) (quoting *Skidmore*, 323 U.S. at 140, 65 S. Ct. at 164). The hospitals rely primarily on a 2004 letter opinion, which OPM issued after the Fourth Circuit's decision in *West Virginia*. That letter states merely that section 8909(f) "does not preempt the West Virginia Health Care Provider Tax Act of 1993" and that OPM "will evaluate whether 5 U.S.C. § 8909(f) preempts taxes in other states in the Fourth Circuit in accordance with the rationale set forth in" the *West Virginia* opinion. *See* Office of Pers. Mgmt., FEHBA Program Carrier Letter No. 2004-12 (Oct. 4, 2004), *available at* http://www.opm.gov/healthcare-insurance/healthcare/carriers/2004/2004-12.pdf. The letter is not meaningful for purposes of this case because the letter does not state a position with respect to the laws of states located outside the Fourth Circuit. Because OPM's opinion letter does not reveal a clear statement about the scope of the FEHBA preemption provision, there is nothing to which we can defer. *See Young*, 135 S. Ct. at 1352 (considering multiple factors, including "thoroughness evident in its consideration").

In sum, the hospitals' additional arguments do not alter our interpretation of the FEHBA preemption provision. Therefore, we conclude that Minnesota Statutes section 256.9657, subdivision 2, is not preempted by FEHBA or by the statute authorizing the TRICARE program.

## D E C I S I O N

The commissioner did not err by adopting the recommendation of the ALJ and granting the department's motion for summary disposition.

**Affirmed.**