PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                                    *Plaintiff,*

v.

STATE OF WEST VIRGINIA,
  *Defendant & Third Party Plaintiff-*
                        *Appellant,*

v.                                              No. 02-2037

SECRETARY, DEPARTMENT OF
HEALTH AND HUMAN SERVICES, as
administrator of the Health Care
Financing Administration; HEALTH
CARE FINANCING ADMINISTRATION,
  *Third Party Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Elizabeth V. Hallanan, Senior District Judge.
(CA-99-1138-2)

Argued: May 7, 2003

Decided: August 7, 2003

Before LUTTIG, WILLIAMS, and TRAXLER, Circuit Judges.

_____

Reversed by published opinion. Judge Luttig wrote an opinion and
issued the judgment of the court. Judge Traxler wrote an opinion con-
curring in the judgment. Judge Williams wrote a dissenting opinion.

**COUNSEL**

**ARGUED:** Katherine A. Schultz, Senior Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Charleston, West Virginia, for Appellant. Sambhav Nott Sankar, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Darrell V. McGraw, Jr., Attorney General, Stephen Stockton, Senior Assistant Attorney General, Jennifer Lea Stollings, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Charleston, West Virginia, for Appellant. Robert D. McCallum, Jr., Assistant Attorney General, Karl K. Warner, II, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

**OPINION**

LUTTIG, Circuit Judge:

Appellant West Virginia appeals the district court's grant of summary judgment for the United States on its claim that West Virginia tax statute 11-27 is preempted by 5 U.S.C. § 8909(f), which bars states from taxing insurance carriers with respect to funds they receive from the Federal Employees Health Benefits Program (FEHBP). Because we conclude that the statutory language of section 8909(f) does not encompass the tax that 11-27 imposes, we reverse the district court's judgment.

I.

Congress has provided for federal employees, their families, and federal retirees (the "Enrollees") to gain access to health benefits through a program known as the Federal Employees Health Benefits Program ("FEHBP"). The Federal Employees Health Benefits Act, whose provisions are now codified in Title 5 of the United States Code in sections 8901 *et seq.*, sets out the terms of FEHBP and provides for the Office of Personnel Management ("OPM"), the agency charged with administering FEHBP, to contract with various health

insurance carriers (the "Carriers") to offer the Carriers' health insurance plans to FEHBP Enrollees. To purchase insurance under a FEHBP plan, Enrollees make payments, matched by contributions from the federal government, into a specifically designated account in the United States Treasury, entitled the Federal Employees Health Benefits Fund (the "Fund"). 5 U.S.C. §§ 8906, 8909. The Fund in turn disburses payments directly to the Carriers, reimbursing them for the health care services they purchase on behalf of the Enrollees.

As part of the Omnibus Budget Reconciliation Act of 1990, Congress amended the statutory scheme governing FEHBP, including section 8909(f), which now reads as follows:

> (1) No tax, fee or other monetary payment may be imposed directly or *indirectly*, on a carrier . . . of an approved health benefits plan by any State . . ., with respect to any payment made from the Fund.

5 U.S.C. § 8909(f) (emphasis added).

Based on this preemption provision, which, broadly-speaking, forbids states from taxing health insurance carriers with respect to funds they obtain from FEHBP, the United States challenged West Virginia's enforcement of West Virginia Code 11-27 *et seq.*, a state tax on the gross receipts health care providers receive for various broad categories of services. The tax's legal incident falls solely on health care providers (*e.g.*, hospitals), who are required to calculate a percentage of their receipts in each taxed category of services, and then to pay that amount to the state tax authority. In stipulations before the court, West Virginia admits that the tax's cost *may* be passed through from providers to Carriers, and that some providers do in fact pass the tax's cost on to Carriers, including with respect to FEHBP covered patient services. *See* J.A. at 163, 178. Ultimately though, the provider alone bears the tax's legal liability.

The district court granted summary judgment to the United States, concluding that 11-27, *insofar* as it taxes health care services provided to FEHBP Enrollees, is preempted by section 8909(f) because providers can, and some in fact do, pass the tax's cost through to the

Carriers, thus *indirectly* taxing the Carriers' purchase of those services with Fund monies.

## II.

We review *de novo* the district court's grant of summary judgment for the United States, viewing the facts and inferences drawn therefrom in the light most favorable to West Virginia. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Because this dispute ultimately turns entirely on a question of statutory interpretation, the district court properly proceeded to resolve the case on summary judgment.

West Virginia argues that section 8909(f) of Title 5 cannot preempt 11-27 because 11-27 is not a tax on the Carriers, but on the providers. Of critical importance, it reasons that even though providers might be able to pass the *economic costs* of the tax along to the Carriers, that potential economic burden does not constitute a tax "imposed [ ] indirectly on [the] Carriers."

Whether the economic pass-through effect with which 11-27 may burden the Carriers constitutes indirect imposition of a tax on the Carriers can be resolved only by first determining what an "indirect tax" is, as that term relates to the relationship between a tax and its payer. As neither section 8909(f), nor its accompanying regulation, 48 C.F.R. § 1631.205-41, provides guidance as to that definition, we instead look to the consistent usage of that term, as it stood in 1990 when Congress amended the provision.[1]

---

[1]48 C.F.R. § 1631.205-41 does speak to how a tax might be indirectly imposed on a subject matter, here measurements of FEHPB premiums, but it does not offer guidance to the different question raised by this case regarding the relationship between a tax and its payer. The former type of "indirect" taxation arises where a tax is assertedly calculated on one subject matter, but in actual fact it is based on a measure of another subject matter. In such cases, it can fairly be said that such a tax "indirectly" taxes that latter subject matter. *See*, *e.g.*, *Itel Containers Int'l Corp.* v. *Huddleston*, 507 U.S. 60, 67 ("The value of international container leases, however, is included in the cost of transporting goods, which in turn is added to the value of the goods when calculating [Value Added

For over two hundred years, a single, consistent usage of the term "indirect tax" has been employed in reference to the relationship between a tax and its payer. That usage establishes that an indirect tax is one imposed on goods. Examples abound since our Founding. At that time, taxes were understood to be imposed indirectly on persons when they were imposed in the form of "Imposts or Duties," U.S. Const. art. I, section 10, cl. 2., or as "excises." *See The Federalist No. 12*, at 61 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("[I]n America, far the greatest part of the national revenue is derived from taxes of the indirect kind, from imposts, and from excises. Duties on imported articles form a large branch of this latter description."); *The Federalist No. 36*, at 187 (Alexander Hamilton) ("[T]axes may be subdivided into those of the *direct* and those of the *indirect* kind. Though objection be made to both, yet the reasoning upon it seems to be confined to the former branch. And indeed, as to the latter, by which must be understood duties and excises on articles of consumption, one is at a loss to conceive what can be the nature of the difficulties apprehended.").

And, up to the present time, the Supreme Court has consistently employed this same usage, saying, for example, that "an indirect tax [is] a tax levied on the goods themselves, and computed as a percentage of the manufacturer's sales price rather than the income or wealth of the purchaser or seller." *Zenith Radio Corp.* v. *United States*, 437 U.S. 443, 446 (1978). *Compare Camps Newfound/Owatonna, Inc.* v.

---

Tax] liability. Itel admits this is tantamount to an indirect tax on the value of international container leases[.]"); *Aloha Airlines, Inc.* v. *Director of Taxation of Hawaii*, 464 U.S. 7, 14 ("Beyond question, a property tax that is measured by gross receipts constitutes at least an "indirect" tax on the gross receipts of the airlines.").

To ensure that *such* "indirect" taxes do not escape preemption, § 1631.205-41 says section 8909(f)'s preemption "applies to all forms of direct and indirect measurements of FEHBP premiums" "regardless of how [the taxes] may be titled, to whom they must be paid, or the purpose for which they are collected[.]" This regulatory instruction, saying nothing about from whom the tax is collected, sheds no light on what constitutes indirectness, as such relates to the relationship between a tax and its payer.

*Town of Harrison*, 520 U.S. 564, 639-40 (1997) (Thomas, J., dissenting) (recognizing the distinction between direct and indirect taxes and that indirect taxes are marked by their being taxes on goods), *United States* v. *Ptasynski*, 462 U.S. 74, 80 (1983) ("The Uniformity Clause [governing duties, imposts, and excises] conditions Congress' power to impose indirect taxes."), *Michelin Tire Corp.* v. *Wages*, 423 U.S. 276, 291 n.12 (1976) (citing Hamilton's definition of an indirect tax from *The Federalist Papers*), *with Hylton* v. *United States*, 3 U.S. 171 (1796) ("The general division of taxes is into direct and indirect. Although the latter term is not to be found in the Constitution, yet the former necessarily implies it. Indirect stands opposed to direct. There may, perhaps, be an indirect tax on a particular article, that cannot be comprehended within the description of duties, or imposts, or excises; in such case it will be comprised under the general denomination of taxes. For the term tax is the genus, and includes, (1) Direct taxes. (2) Duties, imposts, and excises. (3) All other classes of indirect kind, and not within any of the classifications enumerated [above]."). As a consequence of this consistent usage, Congress' reference in section 8909(f) to a tax being imposed indirectly, without further legislative or agency definition, is best understood to refer to a tax, and the legal incidents thereof, being levied on goods in which taxpayers transact.

That indirect taxes have consistently been defined with respect to the legal incidents of goods-based levies, duties, and the like provides strong reason to reject the United States' interpretation of section 8909(f), asserting that the pass-through of tax costs, as an economic matter, equates to the indirect imposition of a tax. But it is not the only reason. Also pivotal here is that the Supreme Court has expressly considered and rejected like economic pass-through theories in formulating its understanding of what constitutes indirect taxation in the analogous constitutional field of preemption of state taxation of the federal government.

In *United States* v. *Fresno*, 429 U.S. 452, 459 (1977), the Court rejected a general economic pass-through theory of "indirect" taxation in deciding whether a state could tax federal employees on their possessory interests in housing owned and supplied to them by the federal government as part of their compensation. The Court there noted first that

[s]ince *McCulloch*, [the Supreme] Court has adhered to the rule that States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government.

*Fresno*, 429 U.S. at 459. The cases the Court cited to establish the latter proposition involved taxes levied on goods, such as in *United States* v. *Mississippi Tax Comm'n*, 421 U.S. 599 (1975), where the government actor was liable for sales taxes on liquor products, and in *Kern-Limerick, Inc.* v. *Scurlock*, 347 U.S. 110 (1954), where the government assumed responsibility by contract for another form of a state excise tax. *See Fresno*, 429 U.S. at 459 n.7. These case citations make clear that the Court's reference to taxes not imposed directly on the Federal Government but whose legal incidence falls on the Federal Government was a reference to indirect taxes.

Having thus noted that states can enforce neither direct nor indirect taxes against the federal government, the Court then acknowledged that

[t]he decisions of this Court since *McCulloch* have been less uniform on the question whether taxes, *the economic but not legal incidence* of which falls in part or in full on the Federal Government, are invalid.

*Fresno*, 429 U.S. at 459-60 (emphasis added). On this question, the Court concluded that its precedent yielded the rule that "the economic burden on a federal function of a state tax imposed on those who deal with the Federal Government does not render the tax unconstitutional so long as the tax is imposed equally on the other similarly situated constituents of the State." *Id.* at 462. Applying this rule, the Court concluded that the state's tax of the government employees' housing benefit, though passing an economic burden through to the federal government by lowering the effective pay rate of its employees, was not a prohibited tax on the federal government because the tax equally applied to other similarly situated constituents of the State.[2]

---

[2]*Cf. North Dakota* v. *United States*, 495 U.S. 423, 445 (1990) (Scalia, J., concurring) (characterizing a state excise tax on construction projects, levied *solely* against contractors working on behalf of the federal government, as an "indirect tax" because the tax was directed at the federal government alone, and, as an economic matter, the government bore the burden of the tax costs).

*Fresno*'s holding therefore results in the rule that an economic pass-through of a generally applicable tax does not constitute a tax, direct or indirect, of the recipient of the pass-through. This is the necessary implication of the Court's statements. For, the Court's conclusion that states, prohibited from imposing taxes directly or indirectly on the federal government, can yet impose economic burdens on the federal government by broadly taxing parties that contract with the federal government, necessarily implies that such economic impositions are not themselves direct or indirect impositions of tax on the federal government.

*Fresno*'s rule should apply here by analogy because of the many similarities between section 8909(f)'s preemption and the Constitution's preemption of state taxation of the federal government. Section 8909(f) precludes states from taxing the Carriers directly or indirectly. The Constitution precludes states from taxing the federal government directly or indirectly. Both ensure that state tax laws do not thwart the will of the federal government. Both face the economic reality that the states' tax regimes would be seriously hampered were all state taxes of non-protected tax payers that create pass-through economic burdens on protected taxpayers treated as indirect taxes of those protected taxpayers. Because of these similarities, we think that like reasoning ought govern analysis of indirect taxation under each. Thus, we follow *Fresno*'s rule and hold that section 8909(f) prohibits states from placing legal incidents of direct or indirect taxes on Carriers with respect to FEHBP funds but allows states to tax other parties in ways that may impose economic burdens on Carriers with respect to FEHBP funds, so long as those taxes are equally applied to the states' other similarly situated constituents.

The government suggests that we should not reach this conclusion because other circuits have decided the matter differently, adopting an economic pass-through analysis under section 8909(f). In particular, it points to the Second and Third Circuits, which in *Health Maint. Org. of New Jersey* v. *Whitman*, 72 F.3d 1123, 1131 (3rd Cir. 1995), and *Travelers Ins. Co.* v. *Cuomo*, 14 F.3d 708, 716 (2d Cir. 1993), concluded, respectively, that special fixed assessments of insurance carriers and surcharges added to the hospital rates paid by insurance carriers both constitute state action prohibited by section 8909(f)

because they "resulted in increased payments from the Fund," *Whitman*, 72 F.3d at 1130.

Neither *Whitman* nor *Travelers*, however, involved a tax that was levied on a party other than the Carriers. Rather, both cases involved impositions levied on the Carriers themselves: In *Whitman*, the imposition was levied by the state on the Carriers as a direct special assessment; in *Travelers*, the imposition was levied by the hospital on the Carriers, under the state's dictate, as a surcharge added to invoices paid by the Carriers. Thus, in those cases, there was never a question as to whether the legal incidents of the tax fell on the Carriers.

The economic pass-through analysis that these courts engaged in was only employed to answer the question of whether the impositions at issue were made "with respect to any payment made from the Fund." § 8909(f). On this score, the courts concluded that the imposition on the Carriers respected payments made from the Fund since the Carriers received their payments from the Fund based on the costs they accrued in providing care to the Enrollees. Consequently, the holdings of *Whitman* and *Travelers* are inapposite here, and there is no split between our understanding of section 8909(f) and theirs.

The dissent, in an attempt to give a broader definition to the term "indirect" and to argue that the Supreme Court has adopted the economic pass through theory, asserts that "the [Supreme] Court has interpreted statutory language nearly identical to § 8909(f)(1) as prohibiting taxes that could be passed through." *Post* at 13. In particular, the dissent contends that, in *Northwest Airlines, Inc.* v. *County of Kent, Michigan*, 510 U.S. 355, 365 (1994), the Court "recognized that fees levied on airlines, such as '[l]anding fees, terminal charges, and other airport user fees,' were levied *indirectly* on 'persons traveling in air commerce or on the carriage of [such] persons.'" *Post* at 13-14 (emphasis added). The Court concluded no such thing.

The question presented in *Northwest Airlines* was whether the various airport fees were "fee[s]" or "other charge[s]" "directly or indirectly" imposed on "persons traveling in air commerce or on the carriage of persons traveling in air commerce," which are prohibited by the Anti-Head Tax Act. 510 U.S. at 365 (quoting 49 U.S.C. § 1513(a)). In resolving this question, the Court did not hold, contrary

to Judge Williams' belief, that the airport fees were imposed "indirectly" on passengers. The Court held, rather, and only, that such fees were imposed "directly *or* indirectly" on either "persons traveling in air commerce *or* on the carriage of persons traveling in air commerce," (*i.e.*, on passengers or airlines). *Id.* (emphases added).

The sleight of hand employed by Judge Williams lies in her selective quotation and omission from the actual text of the Court's opinion, as confirmed by a comparison of the actual text (which was nothing more in substance than a quotation from the Anti-Head Tax Act itself) with Judge Williams' selective quotation from that text (and therefore also from the statute). It was unnecessary for the Supreme Court to be more specific than it was. However, if one were forced to say whether the Court regarded the imposed fees as "direct" or as "indirect" fees on "persons traveling in air commerce" or on "the carriage of persons traveling in air commerce," the obvious conclusion would have to be that the Court regarded the fees as "direct" impositions on "the carriage of persons traveling in air commerce," not as "indirect" fees imposed on "persons traveling in air commerce." After all, the question presented to the Court was whether airport fees that were being *directly* imposed on *carriers* were prohibited by the Anti-Head Tax Act. The Court did not even have a question before it as to the indirect imposition of fees on passengers.[3]

Applying both the consistently employed understanding of an "indirect tax" and *Fresno*'s economic pass-through analysis, we conclude that section 8909(f) does not preempt 11-27. First, though it is

---

[3]Of course, it does *not* follow from the fact that a tax is imposed directly on an airline (even if the Court had held in *Northwest Airlines* that a direct tax had been imposed on airlines) that that tax constitutes an indirect imposition of a tax on passengers. *Post* at 14 n.4. If anything precisely the opposite conclusion follows. It is the dissent's failure to recognize the error in this deduction that leads to the dissent's erroneous construction of the statute. In this respect, the dissent commits the same error as did the lone dissent in *Northwest Airlines*. We would have thought that the fact that our colleague today adopts the interpretation of the Federal Employees Health Benefits Act that arguably would be suggested by *the dissent's* interpretation of the Anti-Head Tax Act in *Northwest Airlines* would have given pause; for, obviously, seven members of the Supreme Court disagreed with that dissent.

readily apparent that 11-27 is an indirect tax, it is of equal immediate apparency that it is an indirect tax of the *providers*, not of the Carriers, for the legal incidents of the tax fall on the providers alone. And second, since we decline to imply some novel economic pass-through theory to section 8909(f)'s prohibition on indirect taxation, the fact that 11-27 equally applies to the states' other similarly situated constituents (*i.e.*, it applies to all providers of the specified categories of health care services, not just to providers of services to Enrollees) suffices to establish that any economic burden it may pass through to the Carriers does not equate to an imposition of an indirect tax on them.[4]

*CONCLUSION*

For the reasons given above, the judgment of the district court is reversed.

*REVERSED*

TRAXLER, Circuit Judge, concurring:

I join with Judge Luttig insofar as he holds that the district court erred in determining that West Virginia's provider tax was preempted by section 8909(f). I further agree that the case before us is readily distinguishable from *Health Maint. Org. of New Jersey v. Whitman*, 72 F.3d 1123 (3d Cir. 1995), and *Travelers Ins. Co. v. Cumo*, 14 F.3d 708 (2d Cir. 1993), for the reason he ascribes: the taxes in those cases were imposed on carriers, not providers, in contravention of federal law. Here, the West Virginia provider tax is imposed on the gross receipts of providers, and is in no way aimed at carriers. In light of a plain reading of section 8909(f), the provider tax is not subject to preemption. The mere fact that a provider may opt to pass through the cost it bears to carriers, including FEHB carriers, does not, in my judgment, transform the West Virginia provider tax into an illicit indirect imposition of a state tax upon the FEHB Fund.

---

[4]Because we conclude that West Virginia Code 11-27 is not preempted by 5 U.S.C. § 8909(f), we do not need to address West Virginia's alternative arguments in support of its tax.

WILLIAMS, Circuit Judge, dissenting:

The Federal Employees Health Benefits Act prohibits States and their subdivisions from imposing a "tax, fee, or other monetary payment" "directly or indirectly" on "a carrier" "with respect to any payment made from the [Employees Health Benefits] Fund." 5 U.S.C.A. § 8909(f)(1) (West 1996). Because West Virginia's Health Care Provider Taxes, W. Va. Code Ann. § 11-27-1 to 11-27-36 (Michie 2002), are imposed indirectly on insurance carriers that participate in the Federal Employees Health Benefits Program (FEHBP), I respectfully dissent.

Judge Luttig reaches his decision by defining "indirect tax" as a tax on goods and relying on the Supreme Court's refusal to apply economic pass-through theories to preemption of state taxes implied in the Constitution. *Ante* at 6. I disagree with both of these bases. First, even accepting Judge Luttig's claim that "indirect tax" is a term of art synonymous with "a tax levied on goods," § 8909(f)(1) clearly does not employ this term of art. The more natural reading of § 8909(f)(1) is that the adverb "indirectly" modifies "imposed," thus describing a tax the economic burden of which falls on a carrier while the legal incidence does not.[1] Second, while it appears that the Supreme Court has rejected economic pass-through theories in its jurisprudence regarding constitutional limits on a State's power to tax,[2] Congress

---

[1]It is a basic canon of statutory construction that all words in a statute are to be given effect. Under Judge Luttig's interpretation of § 8909(f)(1), "directly and indirectly" are not given effect because both "direct taxes" and "indirect taxes" fall under the statute's broad prohibition, which provides that "[n]o tax, fee, or other monetary payment may be imposed . . . on a carrier." Thus, to give effect to the term "indirectly," § 8909(f)(1) must be construed to prohibit taxes the legal incidence of which falls on providers while the economic burden is shouldered by carriers. In the present case, I believe that the tax at issue is an indirect tax that is directly imposed on the providers but, to the extent that the economic burden is passed through, is indirectly imposed on the carriers.

[2]In some cases, however, the pass-through of the economic burden of a tax to the federal government is so clearly intentional that the tax is preempted under the Constitution, not because it is "indirectly imposed" on the government, but rather because the legal incidence is considered

clearly has the power to protect a federal program from the economic burden of a State tax, regardless of the tax's legal incidence. *See United States v. County of Fresno*, 429 U.S. 452, 460 (1977) ("So long as the [State] tax is not directly laid on the Federal Government, it is valid if nondiscriminatory *or until Congress declares otherwise*." (emphasis added)(internal citation omitted)); *accord United States v. Mexico*, 455 U.S. 720, 737 (1982) ("If [federal immunity from state taxation] is to be expanded beyond its narrow constitutional limits, it is Congress that must take responsibility for the decision, by so expressly providing as respects contracts in a particular form, or contracts under particular programs."). As evidenced by the plain meaning of § 8909(f)(1),[3] Congress intended to provide the Fund more protection from State taxes than it would receive from the implied limits in the Constitution: "No tax, fee, or other monetary payment may be imposed, directly or indirectly, on a carrier . . . of an approved health benefits plan by any State . . . with respect to any payment made from the Fund." 5 U.S.C.A. § 8909(f)(1). Congress was clearly trying to avoid money from the Fund being used to shoulder the economic burden of certain State taxes.

Indeed, the Court has interpreted statutory language nearly identical to § 8909(f)(1) as prohibiting taxes that could be passed through. *See Northwest Airlines, Inc. v. County of Kent, MI*, 510 U.S. 355, 365 (1994). The statute at issue in *Northwest Airlines*, the Anti-Head Tax Act (AHTA), "prohibits States and their subdivisions from levying a 'fee' or 'other charge' 'directly or indirectly' on 'persons traveling in air commerce or on the carriage of persons traveling in air commerce.'" *Id.* (quoting 49 U.S.C. § 1513(a)). The Court recognized that fees levied on airlines, such as "[l]anding fees, terminal charges, and

to fall on the government and the person who is legally liable for its payment is considered to be merely collecting the tax from the government for the State. *See, e.g.*, *United States v. State Tax Comm'n*, 421 U.S. 599, 607 (1975) ("The Tax Commission clearly intended—indeed, the scheme unavoidably requires—that the out-of-state distillers and suppliers pass on the markup to the military purchasers.").

[3]Tellingly, although Judge Luttig mounts a strident attack against my interpretation of *Northwest Airlines*, he fails to offer any rejoinder to my textual analysis of § 8909(f).

other airport user fees," were levied indirectly on "persons traveling in air commerce or on the carriage of [such] persons."[4] *Id.* Similarly, while the legal incidence of West Virginia's tax falls on the health care providers, because the economic burden ultimately will be shifted to the carriers, the tax is indirectly imposed on the carriers. In this case, we can say, without a doubt, that West Virginia's Health Care Provider Taxes are imposed indirectly on at least two carriers participating in FEHBP because West Virginia has stipulated that "Morgan County War Memorial Hospital currently passes on the cost of West Virginia's health care provider taxes . . . to GEHA and Mail Handlers carriers." (J.A. at 163.) West Virginia has also stipulated that "these carriers pass the cost on to the Employees Health Benefits Fund." (J.A. at 163.)

---

[4]My description of the Court's holding in *Northwest Airlines* does not, as Judge Luttig suggests, involve any "sleight of hand" or selective quotation. Rather, I have simply distilled the governing principles of that opinion — which are relatively straightforward — and described those governing principles as they pertain to the facts of this case. As stated by the Court in *Northwest Airlines*, the airport user fees at issue in *Northwest Airlines* were levied directly on the airlines. 510 U.S. at 355. The Court nonetheless concluded that the fees fit the definition of being "directly or indirectly" imposed on persons traveling in air commerce or on the carriage of such persons. *Id.* at 365. After all, the Court reminds us, in a previous case the Court had already concluded that "§ 1513(a)'s compass is not limited to *direct* 'head' taxes." *Id.* (emphasis added). Because the Court established that the fees at issue were levied directly on airlines for the use of the airport, and not directly on passengers or the carriage of passengers, it follows that the fees fit the description in § 1513(a) because they were *indirectly* levied on passengers or the carriage of passengers. Thus, my conclusion as to the persuasive value of the decision follows from a faithful reading of the decision itself; no manipulation or deceit is required or is employed. Indeed, unlike Judge Luttig, the dissent in *Northwest Airlines* had no difficulty discerning the purport of the majority's analysis: "To be sure, the Act's apparently broad ban on any fees, taxes, or charges imposed 'directly or *indirectly*, on persons traveling in air commerce,' etc., superficially supports the [majority's] interpretation. Any cost an airline bears is in some sense an 'indirect' charge 'on persons traveling in air commerce,' because the airline ultimately will pass that cost on to consumers in the form of higher ticket prices." 510 U.S. at 376 (Thomas, J., dissenting) (emphasis in original).

Section 8909(f)(1), of course, does not preempt all fees and taxes that are indirectly imposed on a carrier. Rather, a tax is preempted under § 8909(f)(1) only if it is imposed with respect to a payment made from the Fund rather than some other source such as a state or private fund. To address whether West Virginia's Health Care Provider Taxes are imposed with respect to a payment made from the Fund, a brief description of how the Fund works is helpful. Contributions are made to the Fund by the federal government and individual enrollees. 5 U.S.C.A. §§ 8906, 8909 (West 1996). Participating insurance carriers then pay the cost of health services for enrollees. 5 U.S.C.A. §§ 8902(a), 8903 (West 1996). The insurance carrier, in turn, draws money out of the Fund to cover claims and its expenses. 5 U.S.C.A. § 8909(a). West Virginia's Health Care Provider Taxes are directly imposed on the gross receipts of health care providers. *See, e.g.*, W. Va. Code Ann. § 11-27-9(b) ("The tax imposed in subsection (a) of this section shall be two and one-half percent of the gross receipts derived by the taxpayer from furnishing inpatient hospital services in this state."). Any payments received from an enrollee or insurance carrier participating in FEHBP would thus be taxed as a portion of health care providers' gross receipts. *See, e.g.*, W. Va. Code Ann. § 11-27-9(c)(1) ("'Gross receipts' means the amount received or receivable, whether in cash or in kind, from patients, third-party payors and others for inpatient hospital services furnished by the provider . . . ."). Because such payments ultimately will be reimbursed out of the Fund, West Virginia's Health Care Provider Taxes are imposed "with respect to . . . payment[s] made from the Fund." Accordingly, to the extent West Virginia's Health Care Provider Taxes are applied to receipts from a carrier participating in FEHBP, they are preempted.

In short, because West Virginia's Health Care Provider Taxes are imposed indirectly on carriers with regard to payments made from the Fund, I would affirm the district court.