In re Consolidated Hospital Surcharge Appeals of GILLETTE CHILDREN'S SPECIALTY HEALTHCARE, St. Luke's Hospital, North Memorial Health Care, HealthEast Care System, Park Nicollet Health Services, Fairview Health Services, and Children's Hospitals and Clinics of Minnesota.

No. A14–1462.

Supreme Court of Minnesota.

Aug. 17, 2016.

Salvatore G. Rotella, Jr., David J. Bird, Reed Smith LLP, Philadelphia, PA; and Thomas R. Muck, Samuel D. Orbovich, Sten–Erik Hoidal, Fredrikson & Byron, P.A., Minneapolis, MN, for appellants/cross-respondents Gillette Children's Specialty Healthcare, St. Luke's Hospital, North Memorial Health Care, HealthEast Care System, Park Nicollet Health Services, Fairview Health Services, and Children's Hospitals and Clinics of Minnesota.

Lori Swanson, Attorney General, Patricia A. Sonnenberg, Assistant Attorney General, Saint Paul, MN, for respondent/cross-appellant Minnesota Department of Human Services.

OPINION

ANDERSON, Justice.

Respondent Minnesota Department of Human Services (DHS) assessed surcharges against seven hospital and hospital systems (collectively, the Hospitals) under Minn.Stat. § 256.9657, subd. 2 (2014).[1] The Hospitals dispute the authority of DHS to assess the surcharges, contending that the surcharge is preempted by federal law with respect to revenues they receive from insurance carriers participating in both the Federal Employee Health Benefits Program and the TRICARE program. The Commissioner of DHS denied the Hospitals' claim and the court of appeals affirmed, concluding that the surcharge is not preempted. Because federal law does not preempt the surcharge, we affirm.

I.

Under Minnesota law, the Hospitals are subject to a 1.56% surcharge on their net patient revenue, excluding revenue received from Medicare patients. Minn.Stat. § 256.9657, subd. 2. The amount of each hospital's surcharge liability is calculated by DHS and is based on information reported to DHS by each hospital at the end of the fiscal year. DHS then invoices each hospital for its surcharge liability on a monthly basis.[2]

A hospital may appeal the amount of the surcharge assessed by DHS within 30 days

---

1. The Hospitals commenced this challenge under the 2012 version of Minnesota Statutes § 256.9657 (2012), which was amended in 2013. For convenience, we cite to the 2014 version of section 256.9657 in this opinion.

2. During the relevant time period (August 2010 through February 2013), the surcharge was paid in 12 monthly installments and was

calculated based on data from the previous fiscal year. As of 2014, the surcharge is paid in 9 monthly installments, from October through July, and is based on financial information from the previous *calendar* year, as opposed to fiscal year. Minn.Stat. § 256.9657, subd. 4(b)–(c) (2014).

of receiving notice of the amount due. Minn.Stat. § 256.9657, subd. 6 (2014). Because DHS provides notice of each monthly charge, a hospital must perfect an appeal for every monthly assessment that it finds objectionable. Minn. R. 9510.2040, subp. 6 (2015). In this case, the parties have stipulated that the Hospitals all perfected appeals of their surcharge assessments for various months between August 2010 and February 2013.

Each of the appeals asserted the same basic legal theory. The Hospitals claim that federal law preempts the surcharge to the extent that it requires them to pay a surcharge on revenues obtained from insurance carriers that participate in the Federal Employee Health Benefits Act (FEHBA) or the TRICARE program. Both FEHBA and TRICARE are programs through which the federal government provides its employees and uniformed members of the armed services with health insurance benefits.

FEHBA authorizes the federal government to provide health insurance to employees of the federal government, as well as their families and dependents. *See generally* 5 U.S.C. §§ 8901–14 (2012). The program is managed by the Office of Personnel Management (OPM). Rather than providing health insurance directly, FEHBA authorizes OPM to enter into contracts with group health insurance carriers. 5 U.S.C. § 8902(a). Premiums are paid by the employing federal agency and the federal employee and are kept in a fund, known as the FEHBA Fund, in the U.S. Treasury. 5 U.S.C. § 8906. OPM administers the FEHBA Fund and manages disbursements from the fund to FEHBA carriers. *Id.*

Carriers fall into two different categories: community-rated and experience-rated. Premiums paid to community-rated carriers by the FEHBA Fund are based on a capitation rate that charges a set amount for each individual insured by the carrier. 48 C.F.R. § 1602.170–2. Premiums due to community-rated carriers are paid on a monthly basis, regardless of actual costs incurred by the carrier. 48 C.F.R. § 1632.170(a).

Premiums paid to experience-rated carriers, on the other hand, are based on historical data of the actual expenses incurred by the carrier. 48 C.F.R. § 1602.170–7. The premiums due to experience-rated plans are held in the FEHBA Fund under a Letter of Credit (LOC). 48 C.F.R. § 1632.170(b). The premiums are paid to the carrier from the FEHBA Fund on a "checks-presented basis." 48 C.F.R. § 1632.170(b)(2). In other words, an experience-rated carrier must reimburse the provider, usually based on a pre-negotiated rate, and then seek reimbursement for their expenditures from the FEHBA Fund based on the amount the carrier paid to the provider.

TRICARE, the other federal program at issue, provides health insurance to uniformed members of the United States Armed Services and their dependents. 10 U.S.C. § 1072(7) (2012); 32 C.F.R. § 199.17. TRICARE's authorizing statute directs the Secretary of Defense to enter into contracts with group health insurance carriers. 10 U.S.C. § 1074(c)(2)(B) (2012). During the relevant period, TRICARE entered into contracts with regional contractors to administer the TRICARE program.

The TRICARE regional contractor for the West Region, to which Minnesota belongs, entered into contracts with some, but not all, of the Hospitals. If a hospital has a contract with the TRICARE regional contractor, the hospital is reimbursed for care provided to TRICARE patients at a negotiated rate, which cannot exceed TRICARE's maximum-allowable rate and usually represents either a percentage of

the maximum-allowable rate or a percentage of the actual charges billed by the hospital. If a hospital does not have a contract with the TRICARE regional contractor, the hospital is usually reimbursed for care provided to TRICARE patients at the maximum-allowable rate.

Both FEHBA and TRICARE's authorizing statutes contain provisions preempting certain state laws. FEHBA's preemption provision provides:

> No tax, fee, or other monetary payment may be imposed, directly or indirectly, on a carrier or an underwriting or plan administration subcontractor of an approved health benefits plan by any State ... or by any political subdivision or other governmental authority thereof, with respect to any payment made from the Fund.

5 U.S.C. § 8909(f)(1). FEHBA contains an exception for state or local taxes, fees, or monetary payments "on the net income or profit accruing to or realized by such carrier ... from business conducted under this chapter, if that tax, fee, or payment is applicable to a broad range of business activity." 5 U.S.C. § 8909(f)(2).

TRICARE's authorizing statute also includes a preemption provision that entrusts the Secretary of Defense with the power to declare that state laws are preempted if they are "inconsistent with a specific provision of [a TRICARE] contract or a regulation" promulgated by the Secretary of Defense. 10 U.S.C. § 1103(a) (2012). Additionally, the Secretary of Defense may determine that a state law is preempted when "preemption of the State or local law or regulation is necessary to implement or administer the provisions of

the contract or to achieve any other important Federal interest." *Id.* The Secretary of Defense has used this statutory authority to promulgate a regulation with similar language to FEHBA's preemption provision. *See* 32 C.F.R. § 199.17(a)(7)(iii). The Secretary of Defense has specifically mandated that "interpretations [of the preemption regulation] shall be consistent with those applicable to the Federal Employees Health Benefits Program under 5 U.S.C. 8909(f)." *Id.* Thus, the preemption provisions of FEHBA and TRICARE with respect to taxes, fees, or other monetary payments imposed on carriers are coextensive.

The Hospitals claim that these preemption provisions apply and preempt Minn. Stat. § 256.9657, subd. 2, to the extent that the Minnesota statute requires the Hospitals to pay a surcharge on revenue received from FEHBA and TRICARE carriers. DHS denied the Hospitals' appeals via letter on September 21, 2012. At the request of the Hospitals, DHS initiated a consolidated contested case proceeding under the Minnesota Administrative Procedure Act (MAPA) to determine whether Minn.Stat. § 256.9657, subd. 2, is preempted. *See* Minn.Stat. § 14.57 (2014).

The case was assigned to an Administrative Law Judge (ALJ). The parties then entered into an agreement to toll defenses to the Hospitals' claims with respect to years prior to 2010,[3] and to select two representative hospitals through which to try the contested case. Using two representative hospitals allowed the consolidated contested case to resolve the legal issues common to all of the Hospitals' claims while expediting discovery.

---

3. DHS contends that these claims are barred because an appeal was not perfected in a timely manner under Minn.Stat. § 256.9657, subd. 6. The Hospitals contend that they still may be able to recover some or all of the allegedly invalid surcharge payments made for years prior to 2010, either through Minn. Stat. § 256.9657 or some other avenue. These potential claims are not before us.

The two representative hospitals that were chosen are North Memorial Health Care (North Memorial) and Park Nicollet Health Services (Park Nicollet). During the relevant period, North Memorial contracted with various FEHBA carriers, but did not contract with TRICARE. As a result, North Memorial was reimbursed at negotiated rates for services provided to FEHBA patients and at the maximum-allowable rate for services provided to TRICARE patients. During the relevant period, Park Nicollet contracted with both FEHBA carriers and TRICARE. As a result, Park Nicollet was reimbursed at previously negotiated rates for services provided to both FEHBA and TRICARE patients.

Both parties moved for summary disposition, which is the MAPA equivalent of summary judgment. *Pietsch v. Minn. Bd. of Chiropractic Exam'rs*, 683 N.W.2d 303, 306 (Minn.2004) (citing Minn. R. 1400.5500(K) (2003)). To support their motion for summary disposition, the Hospitals submitted declarations from senior administrative officials at North Memorial and Park Nicollet to show that the Hospitals passed on the cost of the surcharge to the FEHBA and TRICARE carriers. The administrative officials described the process for calculating the surcharge liability, stated that their respective hospitals counted the surcharge as a cost when setting rates for their services, and explained that their respective hospitals negotiated rates with FEHBA and TRICARE carriers that covered all of the hospitals' expenses, including the surcharge.

The Hospitals also commissioned an expert report. The expert examined the financial statements and budgeting process of the two representative hospitals, along with other information provided by the Hospitals. The expert concluded that the representative hospitals considered the surcharge as an expense when setting their budgets and rates for services and that, as a result, the cost of the surcharge was ultimately passed on to FEHBA and TRICARE carriers.

After a hearing, the ALJ issued recommendations to the Commissioner of DHS. The ALJ concluded that the surcharge was not preempted because, although it is a "tax, fee, or other monetary payment," the surcharge is not "imposed, directly or indirectly, on a carrier." 5 U.S.C. § 8909(f)(1). As a result, the ALJ recommended denying the Hospitals' motion for summary disposition and granting DHS's motion for summary disposition. The Hospitals filed exceptions to the ALJ's recommendations and submitted those exceptions to the Commissioner. After reviewing the Hospitals' exceptions and the responses from DHS, the Commissioner issued an order resolving the contested case. The Commissioner followed the recommendations of the ALJ, denied the Hospitals' motion for summary disposition, and granted DHS's motion for summary disposition.

The Hospitals appealed the Commissioner's order to the court of appeals pursuant to Minn.Stat. § 14.63 (2014), and the court of appeals affirmed the Commissioner's decision. *In re Gillette Children's Specialty Healthcare*, 867 N.W.2d 513 (Minn.App. 2015). We subsequently granted the Hospitals' petition for review on the preemption issue and granted DHS's cross-petition challenging whether the Hospitals have standing in this case.

## II.

As an initial matter, DHS argues that the Hospitals do not have standing to challenge their surcharge assessments. Under Minnesota law, "[s]tanding is acquired in two ways: either the plaintiff has suffered some 'injury-in-fact' or the plain-

tiff is the beneficiary of some legislative enactment granting standing." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn.1996). "Because standing is a jurisdictional issue, we evaluate decisions on standing de novo." *In re Custody of D.T.R.*, 796 N.W.2d 509, 512 (Minn.2011).

■ DHS argues that, because the Hospitals claim that they have passed on the full cost of the surcharge to the FEHBA and TRICARE carriers, the Hospitals have not suffered an injury and therefore have no standing. The Hospitals counter that they have standing under either means of establishing standing. We conclude that the Hospitals have standing pursuant to statute.

The Hospitals claim standing under Minn.Stat. § 256.9657, subd. 6, which states that providers may request a contested-case hearing regarding the amount of the surcharge DHS assesses them on a monthly basis. The Hospitals argue that they have standing under this statute because they challenged the amount of the surcharge and each hospital perfected its appeals for various months within the relevant time period. DHS responds by arguing that the statute gives the Hospitals the ability to challenge only the amount of the surcharge, not its validity. Specifically, DHS argues that section 256.9657, subdivision 6, permits challenges regarding only the technical calculation of net revenues and the surcharge amount.

The arguments advanced by DHS are unpersuasive. The plain language of section 256.9657, subdivision 6, clearly gives providers the right to appeal the amount of the surcharge assessed on them by DHS. In this case, the Hospitals have done just that. DHS is correct that the basis of

the claim made by the Hospitals focuses on the legal authority for the assessment rather than, for example, an argument about whether a specific assessment was calculated correctly. But by arguing that some of their net revenues cannot be subjected to the surcharge, the Hospitals are disputing the total amount of the assessed surcharges, contending that the amount of the surcharges should be reduced. The contention of DHS that the statute only contemplates challenges regarding the calculation of net revenues finds no support in the statutory text. In fact, Minn.Stat. § 256.9657, subd. 6, never uses the phrase "net revenue." Nor does the statutory language narrow the permissible claims to arithmetic errors. The Hospitals' challenge to the amount of their surcharge falls squarely within the parameters of the appeals contemplated by Minn.Stat. § 256.9657, subd. 6, and the Hospitals clearly have standing to pursue their claims.[4]

## III.

We now turn to the Hospitals' contention that Minn.Stat. § 256.9657, subd. 2, is preempted by federal law to the extent that it requires the Hospitals to pay a surcharge on revenue received from FEHBA and TRICARE carriers.

### A.

■ This case comes before us on review from an administrative proceeding under MAPA in which the agency interpreted a federal statute. We review an administrative agency's interpretation of federal statutes de novo. *Hinneberg v. Big Stone Cty. Hous. & Redev. Auth.*, 706 N.W.2d 220, 225 (Minn.2005). We independently review agency decisions without deferring to the rulings of lower

4. Because we conclude that the Hospitals have standing pursuant to a statutory grant, it

is unnecessary to determine whether they have suffered an injury-in-fact.

courts. *Minn. Power & Light Co. v. Minn. Pub. Utils. Comm'n,* 342 N.W.2d 324, 329 (Minn.1983). Nonetheless, we show "substantial judicial deference to the fact-finding processes of the administrative agency." *Quinn Distrib. Co. v. Quast Transfer, Inc.,* 288 Minn. 442, 448, 181 N.W.2d 696, 699 (1970).

■■■ The Commissioner decided this case on cross-motions for summary disposition. "Summary disposition is the administrative equivalent of summary judgment." *Pietsch v. Minn. Bd. of Chiropractic Exam'rs,* 683 N.W.2d 303, 306 (Minn.2004) (citing Minn. R. 1400.5500(K) (2003)). A contested case may be resolved on a motion for summary disposition "where there is no genuine issue as to any material fact." Minn. R. 1400.5500(K) (2015). On review from an order granting summary disposition, the scope of our review is governed by MAPA. *Hy–Vee Food Stores, Inc. v. Minn. Dep't of Health,* 705 N.W.2d 181, 184 (Minn.2005). An administrative agency's decision in a contested case may be overturned or modified

> if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are: (a) in violation of constitutional provisions; or (b) in excess of the statutory authority or jurisdiction of the agency; or (c) made

upon unlawful procedure; or (d) affected by other error of law; or (e) unsupported by substantial evidence in view of the entire record as submitted; or (f) arbitrary or capricious.

Minn.Stat. § 14.69 (2014).

■■■ Because this case involves a question of preemption, it is necessary for us to review when and how state law may be preempted by federal law. In general, state law may be preempted "by express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The only form of preemption at issue in this case is express preemption.[5]

■■■ " '[T]he purpose of Congress is the ultimate touchstone' in every pre-emption case." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quoting *Retail Clerks Int'l Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood,*

---

5. DHS repeatedly relies on cases concerning the constitutional preemption of state taxes on the federal government. *See United States v. New Mexico,* 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982); *United States v. Cty. of Fresno,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). The test for whether a state tax is preempted as a matter of constitutional law is very different from the statutory preemption test established by FEHBA. "States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government." *Cty. of Fresno,* 429

U.S. at 459, 97 S.Ct. 699. But "[s]o long as the tax is not directly laid on the Federal Government, it is valid if nondiscriminatory ... or until Congress declares otherwise." *Id.* at 460, 97 S.Ct. 699 (citations omitted). The surcharge in this case is valid as a matter of constitutional law, and neither party argues to the contrary. Rather, the Hospitals claim that Congress has chosen to "declare otherwise" and preempt certain state taxes, including taxes that are "imposed; directly or indirectly, on a carrier." Thus, these decisions are not applicable, or even particularly instructive, here.

507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). But "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Altria Grp., Inc. v. Good,* 555 U.S. 70, 76, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008).

When a court examines a preemption provision, it must do so "with the starting presumption that Congress does not intend to supplant state law." *Travelers Ins. Co.,* 514 U.S. at 654, 115 S.Ct. 1671. When a state law concerns an area, such as health and safety, that is traditionally included within a state's police power, the party alleging preemption bears "the considerable burden of overcoming" the presumption that Congress does not intend to preempt the state law. *De Buono v. NYSA–ILA Med. & Clinical Servs. Fund,* 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). This is true even when the state law in question is a revenue-raising measure, as opposed to a regulatory measure. *Id.* "Thus, when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfa-

vors pre-emption.' " *Altria Grp., Inc.,* 555 U.S. at 77, 129 S.Ct. 538 (quoting *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005)).

## B.

FEHBA's preemption provision reads, in relevant part: "No tax, fee, or other monetary payment may be imposed, directly or indirectly, on a carrier ... by any State ... with respect to any payment made from the Fund." 5 U.S.C. § 8909(f)(1). Thus, the provision preempts any (1) tax, fee, or other monetary payment, (2) imposed by a state, (3) directly or indirectly on a carrier, (4) with respect to any payment made from the fund.

Although it is undisputed that the surcharge is a "tax, fee, or other monetary payment" within the meaning of the statute, the Hospitals contend that the surcharge is *indirectly* imposed on the FEHBA and TRICARE carriers when the Hospitals pass the surcharge on to the carriers via higher prices for various services.[6] DHS disagrees, arguing that the Hospitals' interpretation takes an imper-

---

**6.** The Hospitals do not offer a definition of "indirect" as part of their argument, relying instead on what they view as analogous United States Supreme Court precedent. The primary case relied on by the Hospitals is *Northwest Airlines, Inc. v.' County of Kent, Michigan,* 510 U.S. 355, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994). The Hospitals claim that *Northwest Airlines* held that certain fees imposed on airlines were "indirectly" imposed on air passengers through higher prices.

But *Northwest Airlines* is not as useful as the Hospitals suggest. *Northwest Airlines* held that certain fees imposed by an airport authority on airlines were preempted by a federal statute banning fees or other charges imposed, either directly or indirectly, on " 'persons traveling in air commerce or on the carriage of persons traveling in air commerce.' " 510 U.S. at 365, 114 S.Ct. 855

(quoting 49 U.S.C. § 1513(a)). Although the Court concluded that the fees in question were preempted, it did not specify whether the pre-emption was imposed indirectly on "persons traveling in air commerce" or "on the carriage of persons traveling in air commerce." *See id.*

Given the structure of the fees, it is more likely that the Court characterized the fees as charges imposed directly on the "carriage of persons traveling in air commerce." In fact, the Fourth Circuit rejected an argument that attempted to analogize the statute in *Northwest Airlines* to the FEHBA preemption provision for this very reason. *See United States v. West Virginia,* 339 F.3d 212, 218 (4th Cir. 2003). *Northwest Airlines* does not clearly deal with a statute that was preempted because it "indirectly" imposed fees on a carrier. As a result, *Northwest Airlines* is unhelpful in this case.

missibly broad view of the term "indirect." DHS claims that if Congress intended to reach taxes that impacted carriers through an economic pass-through theory, Congress would have used more explicit language.

The *American Heritage Dictionary* defines "indirect" as "[n]ot directly planned for; secondary." *The American Heritage Dictionary of the English Language* 894 (5th ed.2011). If the surcharge causes the Hospitals to increase their prices,[7] then its "secondary" impact would be to increase the amount paid by the FEHBA and TRICARE carriers. As a result, the plain language of 5 U.S.C. § 8909(f)(1) arguably implicates taxes and fees that impact FEHBA and TRICARE carriers through an economic pass-through theory.

Next, DHS argues that the Hospitals' interpretation of "with respect to any payment made from the fund" is impermissibly broad. The *American Heritage Dictionary* defines the idiom "with/in respect to" as "[i]n reference or relation to; concerning." *American Heritage Dictionary of the English Language* 1495 (5th ed.2011). Although the surcharge does not explicitly reference payments from the fund, the surcharge is related to payments from the fund. This is particularly true in the case of experience-rated FEHBA carriers. If the surcharge increases the amount that the Hospitals charge experience-rated FEHBA carriers, it also necessarily increases the amount of reimbursement that those experience-rated carriers will seek from the FEHBA Fund on a checks-presented basis.[8] *See* discussion *supra* at 781. Consequently, the plain language of 5 U.S.C. § 8909(f)(1) arguably covers taxes, fees, and monetary payments that necessarily increase the amount of reimbursement sought from the FEHBA Fund by FEHBA carriers. *See Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 716 (2d Cir.1993), *rev'd on other grounds by New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (holding that a surcharge that increased the prices charged to FEHBA carriers was "with respect to" payments from the FEHBA Fund because the surcharge necessarily increased the amount paid from the fund to experience-rated FEHBA carriers).

■■■ But, despite the fact that the language of FEHBA's preemption provision is broad and, arguably, implicates taxes and fees similar to the surcharge at issue

7. DHS also argues that the Hospitals have not demonstrated that they actually pass on the cost of the surcharge. The Hospitals submitted declarations and an expert report that all show that the representative hospitals treated the surcharge as an expense and that they passed on the cost of that expense by increasing their prices. DHS submitted no evidence to the contrary.

Although DHS is correct that the Hospitals could have chosen to reduce profits rather than pass on the surcharge and that the Hospitals could decide to maintain the same prices in the absence of the surcharge, there is clear evidence that the Hospitals in this case made a conscious, deliberate decision to pass the expense of the surcharge on to the FEHBA and TRICARE carriers. Additionally, the ALJ found that the surcharge was passed on and we choose to defer to the ALJ's findings of fact in this case. *See Quinn Distrib. Co.*, 288 Minn. at 448, 181 N.W.2d at 699.

8. Additionally, as the Hospitals note, the United States Supreme Court has interpreted the similar phrase "relate to" to be a very broad expression of preemptive intent by Congress in the ERISA preemption context. *See, e.g., Travelers Ins. Co.*, 514 U.S. at 655, 115 S.Ct. 1671 ("The governing text of ERISA is clearly expansive."). Of course, ERISA preemption is a unique field, and the *Travelers* Court also recognized that the term "relate to" cannot be taken to its furthest extremes in the ERISA context, lest there be no limits on ERISA preemption. *Id.*

in this case, FEHBA does not preempt Minn.Stat. § 256.9657, subd. 2. FEHBA's preemption provision does not apply here because Minn.Stat. § 256.9657, subd. 2, does not *impose* a tax, fee, or other monetary payment on FEHBA or TRICARE carriers. The *American Heritage Dictionary* defines "impose" as "[t]o establish or apply as compulsory; levy." *American Heritage Dictionary of the English Language* 883 (5th ed.2011). Simply put, no part of Minn.Stat. § 256.9657 compels FEHBA or TRICARE carriers to pay the surcharge. The only compulsory obligation to pay the surcharge falls squarely and exclusively on the Hospitals.

 That the Hospitals voluntarily choose to pass on the cost of the surcharge to FEHBA and TRICARE carriers via increased prices does not mean that the State of Minnesota is imposing the surcharge on the carriers. In fact, no one is "imposing" the surcharge on the carriers at all. The rates paid by FEHBA and TRICARE carriers are the product of negotiated contracts between the carriers and service providers. The decision of the Hospitals to pass on the cost of the surcharge to the carriers does not have the force of law and is not compulsory. Ultimately, the carriers could either refuse to pay the increased prices or negotiate better rates with the Hospitals.

Because the carriers are not compelled by the State of Minnesota to pay the surcharge, FEHBA's preemption provision does not apply. This interpretation not only gives effect to the plain meaning of the word "impose," it also makes sense within the context of the statute, is consistent with the decisions of federal courts that have examined FEHBA preemption, and comports with federal case law in analogous situations.

First, the plain meaning of "impose" makes sense within the statutory context.

If "impose" does not carry its plain and ordinary meaning and can encompass the voluntary passing on of taxes, fees, and other monetary payments, then the State cannot control which taxes and fees are preempted and which are not.

In this case, for instance, the Hospitals made a voluntary, unilateral choice to pass on the full cost of the surcharge to the carriers. But it is also possible to envision a situation in which the Hospitals make a voluntary, unilateral choice to internalize the cost of the surcharge by reducing their profit margins. Under the Hospitals' interpretation of the preemption provision, the Hospitals' decision to either pass on or internalize the cost of the surcharge determines whether the surcharge is preempted. If the cost is passed on, the surcharge is preempted; if the cost is internalized, the surcharge is not preempted.

This scenario not only ignores the plain meaning of "impose," which requires that the tax or fee imposed be compulsory, but also creates an untenable situation in which a State cannot predict whether, and under what circumstances, its laws are preempted. Rather, the State would be at the mercy of private parties who would decide when, and whether, a tax or fee is preempted based solely on whether the tax is passed along to carriers or internalized by providers.

Additionally, the Hospitals' interpretation would lead to a slippery slope. Under the Hospitals' view of "impose," a tax or fee is preempted any time that it can be shown to increase the costs of a FEHBA carrier. But any number of taxes and fees can increase the costs of FEHBA carriers, from sales taxes on medical equipment to taxes and fees on the trucks that transport medical supplies. If we were to accept the Hospitals' view of FEHBA preemption, the only limit on preemption would be the creativity of the accountants who attempt

to trace the impact of a tax or fee on the costs of FEHBA carriers. By contrast, applying the plain meaning of "impose" allows parties, states, and courts to clearly delineate between preempted and non-preempted taxes and fees.

Second, our interpretation is consistent with the Second Circuit's ruling in *Travelers*, which held that a New York statute requiring hospitals to collect a surcharge from private insurance carriers, including FEHBA carriers, was preempted. 14 F.3d at 715. The Second Circuit noted that there was no dispute regarding whether the surcharge was a tax, fee, or other monetary payment imposed on a carrier because the law expressly provided that hospitals were required to collect the surcharge from the FEHBA carriers.[9] *Id.* at 712, 715. By contrast, here, there is no requirement that the Hospitals collect the surcharge from the carriers; the only requirement is that the Hospitals pay the surcharge to the State.[10] *See* Minn.Stat. § 256.9657, subd. 2.

In fact, the New York law at issue in *Travelers* is an excellent example of what the "indirect imposition" of a tax or fee can look like under the plain meaning of "impose." The New York law acted exclusively on hospitals, but it *required* those hospitals to pass on a cost, in that case a surcharge, to FEHBA carriers by *requir-ing* the hospitals to collect the surcharge from the FEHBA carriers. *Travelers Ins. Co.*, 14 F.3d at 712. Consequently, New York *imposed* a tax, fee, or other monetary payment on the FEHBA carriers, but it was doing so indirectly by using the hospitals as a conduit for the tax.

Third, our interpretation of "impose" is consistent with analogous federal case law cited by the Hospitals. Aside from their reliance on *Northwest Airlines, Inc. v. County of Kent, Michigan*, 510 U.S. 355, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994), which is misplaced, *see supra* at n. 5, the Hospitals also cite several other regulatory decisions in which the United States Supreme Court held that various state laws were preempted. The Hospitals argue that these cases stand for the proposition that a state cannot avoid federal preemption by regulating another entity in the same supply chain. But in each of the cases cited by the Hospitals, the preempted regulation *required* compliance from the entity that Congress sought to shelter from regulation.

For example, in *American Trucking Associations, Inc. v. City of Los Angeles*, the Supreme Court held that several regulations promulgated by the Port of Los Angeles were preempted by a federal law that prohibited state regulation of motor

**9.** Similarly, in *Health Maintenance Organization of New Jersey, Inc. v. Whitman*, a New Jersey assessment on health insurance carriers was preempted with respect to FEHBA carriers because it required the carriers to pay the state directly based on the number of individuals the carrier insured, thus "imposing" a tax, fee, or other monetary payment on the FEHBA carriers. *See* 72 F.3d 1123, 1125, 1128–31 (3d Cir.1995).

The Minnesota Tax Court's decision in *Healthpartners, Inc. v. Commissioner of Revenue* also is distinguishable. No. 6925, 1999 WL 123289 (Minn. T.C. Mar. 4, 1999). In *Healthpartners*, the tax was imposed directly on a staff-model health plan that participated in FEHBA as a carrier. *Id.* at \*6. As a result, the carrier, in that case also the provider, was *required* to pay the tax and the tax was imposed on the carrier itself. *Id.* Consequently, the tax court noted that the "tax is incontrovertibly a tax, and is imposed upon the 'carrier' of the insurance." *Id.*

**10.** Our interpretation is also consistent in result, but not in reasoning, with the Fourth Circuit's decision in *United States v. West Virginia*, which held that a surcharge very similar to Minn.Stat. § 256.9657, subd. 2, was not preempted by FEHBA. 339 F.3d 212, 218 (4th Cir.2003).

carriers. —— U.S. ——, 133 S.Ct. 2096, 186 L.Ed.2d 177 (2013), The Board of Harbor Commissioners, which runs the Port, sought to avoid preemption by issuing regulations that directed terminal operators to require trucking companies contracting with the terminal operators to follow certain regulations. *Id.* at ——, 133 S.Ct. at 2103. The Supreme Court invalidated the Port's regulations because they indirectly regulated motor carriers in a manner prohibited by federal law. *Id.* at ——, 133 S.Ct. at 2103. But the key fact was that the Port "forced terminal operators—and through them, trucking companies—to alter their conduct." *Id.* at ——, 133 S.Ct. at 2103. The regulations were not invalid because the terminal operators voluntarily passed the regulatory burden on to motor carriers. Rather, the regulations were invalid because the terminal operators were *forced* to pass on the regulatory burden to motor carriers.

In summary, the plain language of 5 U.S.C. § 8909(f)(1) only preempts taxes, fees, and other monetary payments that are *imposed*, either directly or indirectly, on carriers. To impose a tax, fee, or monetary payment means to make it compulsory. In this instance, the State of Minnesota has not *imposed* the surcharge on FEHBA or TRICARE carriers because those carriers are never compelled by the State to pay the surcharge. Instead, to the extent that the economic burden of the surcharge is borne by the carriers, it is because the Hospitals have voluntarily chosen to pass on the cost of the surcharge to the carriers, and the carriers have voluntarily chosen to pay the cost of the surcharge as part of their agreements with the Hospitals. As a result, the surcharge found in Minn.Stat. § 256.9657, subd. 2, is not preempted by 5 U.S.C. § 8909(f)(1).

For these reasons, we affirm the decision of the court of appeals.

Affirmed.

McBRIDE, J., Acting Justice *.

LILLEHAUG, HUDSON, and CHUTICH, JJ., took no part in the consideration or decision of this case.

* Appointed pursuant to Minn. Const. art. VI, § 2, and Minn. Stat. § 2.724 (2014).